<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

WINSTON L. MCPHERSON,     :
                              :  Civil Action No. 07-6119 (SDW)
            Plaintiff,    :
                              :
                              :
            v.               :  **OPINION**
                              :
UNITED STATES OF AMERICA,    :
et al.,                  :
                              :
            Defendants.   :

**APPEARANCES:**

      WINSTON L. MCPHERSON, Plaintiff <u>pro se</u>
      CX6324
      G-Unit
      1000 Follies Road
      Dallas, Pennsylvania 18612

**WIGENTON**, District Judge

      Plaintiff Winston L. McPherson, currently confined at the State Correctional Institution ("SCI") Dallas in Luzerne County, Pennsylvania, seeks to bring this action <u>in forma pauperis</u>, alleging violations of his constitutional rights under 42 U.S.C. § 1983.  Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

      At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be

dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed because it fails to state a claim at this time.

## I.  BACKGROUND

Plaintiff, Winston L. McPherson ("McPherson"), brings this action against numerous defendants as follows: the United States of America; the State of New Jersey; Hudson County, New Jersey; District Attorney John Doe I; Assistant District Attorney John Doe II; Detective John Appleyard; Commonwealth of Pennsylvania; Philadelphia County; District Attorney Lynne Abraham; Assistant District Attorney Paul Laughlin; Assistant District Attorney Hugh Colihan; Detective James Dougherty; Detective Leon Lubiejewski. (Complaint, Caption and ¶¶ 2-14).

The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

McPherson is a native and citizen of Jamaica, who emigrated from Jamaica to the United States in 1986.  In 1988, McPherson was arrested on drug related charges in the State of New Jersey, but the charges were later dismissed.  He states that at no time

2

during his arrest in 1988 was he advised by any federal, state or local law enforcement official of his right to consular notification under Article 36 of the Vienna Convention. (Complaint, ¶ 15).

In 1993, McPherson was arrested again, this time for resisting arrest and disorderly conduct stemming from a fight at a night club in Philadelphia, Pennsylvania. Plaintiff alleges that these charges were dropped after several witnesses came forward and explained that McPherson was not involved and only attempted to stop two women from fighting. Once more, plaintiff claims that he was not advised of his right to consular notification with a representative from the Jamaican embassy. (Compl., ¶ 17).

On March 23, 1995, while McPherson was sitting in a car being operated by another person, defendant Detective Appleyard approached the vehicle with his gun drawn and asked if they were Jamaican. When the two responded affirmatively, Appleyard ordered them to exit the vehicle with their hands in the air. Appleyard told plaintiff and his friend that they were being questioned concerning a robbery under investigation. Both were placed in custody in an unmarked car and taken to the Kearney police station. Plaintiff's friend was released, but McPherson remained in custody for interrogation for several hours regarding a murder in Philadelphia, PA. McPherson asked if he could call

his mother, but when the officers called him a "mama's boy", plaintiff requested a call to an attorney who had represented him in the past.  This request for a telephone call allegedly was denied.  (Compl., ¶¶ 18-19).

Detective Appleyard continued to question plaintiff about the murder in Philadelphia and subjected plaintiff to "techniques of persuasion" by placing him in an isolated setting surrounded by police officers, in an attempt to intimidate McPherson into confessing to the murder.  McPherson admitted that he had been to Philadelphia.  He alleges that, during this interrogation, he was never informed of his right to remain silent or his right to consular notification.  (Compl., ¶ 20).

Thereafter, in April 1995, an extradition hearing was conducted in the State of New Jersey by Hudson County officials in order to extradite plaintiff to Philadelphia on the murder charge.  During these extradition proceedings, it was determined that plaintiff was a Jamaican citizen.  However, there was no effort to inform McPherson concerning his right to consular notification under Article 36 of the Vienna Convention.  (Compl., ¶ 21).

Plaintiff was extradited to Pennsylvania and placed in the custody of the Philadelphia District Attorney's Office and the Philadelphia Police Department for interrogation.  Named defendants, Detectives Leon Lubiejewski and James Dougherty,

4

interrogated McPherson for more than eight hours.  The detectives informed plaintiff that during their investigation they had learned that the shooter was a Jamaican drug dealer called "Blondie."  The detectives also told McPherson that "they have never arrested a Jamaican who wasn't a drug dealer that did not commit murder."  (Compl., ¶ 22).

McPherson now alleges, based on information and belief, that since the early 1980s and late 1990s, there has been an agenda by the Philadelphia District Attorney's Office and the County of Philadelphia to slander Jamaicans by depicting them as murderous drug dealers and posse members.  In particular, in Philadelphia, Jamaicans were often labeled as dangerous, gun-toting drug dealers and members of the notorious "Jamaican Shower Posse."  As a result of this bias, plaintiff alleges that Jamaicans stood little chance of receiving a fair trial by an impartial jury. (Compl., ¶ 23).

McPherson was tried before a jury on charges of first degree murder, manslaughter, and possession of an instrument of crime. McPherson had an arraignment, preliminary hearing, trial and sentencing hearings, but was never informed during any of these criminal proceedings about his right to have consular notification pursuant to Article 36 of the Vienna Convention.  He contends that, had he been informed of this right, he would have availed himself of consular representation, who would have

5

assisted counsel in preparing a stronger defense that most likely would have changed the outcome of plaintiff's trial.  (Compl., ¶¶ 24-25).

In particular, McPherson alleges that he did not understand police practices and customs, the criminal proceedings, and was unable to express himself due to his "Pat'wa" language, which at times needed interpretation.  He also alleges that he had no means of obtaining evidence or witnesses from Jamaica, due to this lack of consular representation, to dispute the misleading characterization "painted" by the prosecutor at plaintiff's criminal trial concerning plaintiff's criminal history.  (Compl., ¶¶ 26-27).

McPherson alleges that defendants violated federal law and treaties by failing to follow the procedure established in 28 C.F.R. § 50.5 and Article 36 of the Vienna Convention on consular notification.  He also asserts that this failure to provide consular notification violated his right to due process and equal protection of the law as guaranteed by the Fourteenth Amendment of the United States Constitution, as well as his other constitutional rights under the Fifth and Sixth Amendments.  He brings this action under the Alien Tort Claims Act ("ACTA"), 28 U.S.C. § 1350 and 42 U.S.C. § 1983.[1]

---

[1]  Section 1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within

Plaintiff seeks a declaratory judgment that defendants violated his rights and compensatory and punitive damages in excess of $100 million.

II. <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding <u>in forma pauperis</u> or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Here, plaintiff is a prisoner who is proceeding <u>in forma pauperis</u>, and he is asserting claims against government prison officials with respect to incidents occurring while he was confined. Consequently, this action is subject to <u>sua sponte</u> screening for dismissal under 28 U.S.C.

---

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

§ 1915(e)(2)(B) because he is proceeding as an indigent, and §
1915A because he is a prisoner.

In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  See Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197,
2200 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976)
and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also
United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court
must "accept as true all of the allegations in the complaint and
all reasonable inferences that can be drawn therefrom, and view
them in the light most favorable to the plaintiff."  Morse v.
Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The
Court need not, however, credit a pro se plaintiff's "bald
assertions" or "legal conclusions."  Id.

In short, a pro se prisoner plaintiff simply need comply
with the pleading requirements of Rule 8(a)(2)(complaint should
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief").  See Erickson, 127 S.Ct. at
2200.  Thus, a complaint must plead facts sufficient at least to
"suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d
218, 236 n. 12 (3d Cir. 2004).  "Specific facts are not
necessary; the statement need only 'give the defendant fair
notice of what the ... claim is and the grounds upon which it
rests."  Erickson, 127 S.Ct. at 2200 (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires more
> than labels and conclusions, and a formulaic recitation of
> the elements of a cause of action will not do, see Papasan
> v. Allain, 478 U.S. 265, 286 (1986)(on a motion to dismiss,
> courts "are not bound to accept as true a legal conclusion
> couched as a factual allegation").  Factual allegations must
> be enough to raise a right to relief above the speculation
> level. ...

Bell v. Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S.Ct. 1955,
1964-65 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
Accordingly, a pro se prisoner plaintiff may allege only enough
factual matter (taken as true) to suggest the required elements
of the claim(s) asserted.  Twombly, supra; Phillips v. Allegheny,
515 F.3d 224, 234-35 (3d Cir. 2008).

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a
complaint is "frivolous" is an objective one.  Deutsch v. United
States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a
claim only if it appears "'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v.
Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d
371, 373 (3d Cir. 1981).  However, where a complaint can be
remedied by an amendment, a district court may not dismiss the

complaint with prejudice, but must permit the amendment. <u>Denton
v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Alston v. Parker</u>, 363 F.3d
229 (3d Cir. 2004)(complaint that satisfied notice pleading
requirement that it contain short, plain statement of the claim
but lacked sufficient detail to function as a guide to discovery
was not required to be dismissed for failure to state a claim;
district court should permit a curative amendment before
dismissing a complaint, unless an amendment would be futile or
inequitable); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103,
108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir.
2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v.
Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

III.  <u>ANALYSIS</u>

A.  <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment to the United States Constitution
provides that, "The Judicial power of the United States shall not
be construed to extend to any suit in law or equity, commenced or
prosecuted against one of the United States by citizens of
another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking
to impose a liability which must be paid from public funds in a
state treasury is barred from federal court by the Eleventh
Amendment, unless Eleventh Amendment immunity is waived by the
state itself or by federal statute. <u>See</u>, <u>e.g.</u>, <u>Edelman v.</u>

Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment
protects states and their agencies and departments from suit in
federal court regardless of the type of relief sought.  Pennhurst
State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).
Similarly, absent consent by a state, the Eleventh Amendment bars
federal court suits for money damages against state officers in
their official capacities.  See Kentucky v. Graham, 473 U.S. 159,
169 (1985).  Section 1983 does not override a state's Eleventh
Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

     In addition, neither states, nor governmental entities that
are considered arms of the state for Eleventh Amendment purposes,
nor state officers sued in their official capacities for money
damages are persons within the meaning of § 1983.  Will v.
Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10
(1989); Grabow v. Southern State Correctional Facility, 726 F.
Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of
Corrections is not a person under § 1983).

     Here, McPherson asserts a claim for money damages against
the State of New Jersey and the Commonwealth of Pennsylvania for
their failure to comply with Article 36 of the Vienna Convention,
which required that plaintiff be informed of his right to
consular notification upon arrest.  However, as set forth above,
the State of New Jersey and the Commonwealth of Pennsylvania
clearly are not subject to liability for money damages pursuant

to the Eleventh Amendment.  Accordingly, the Complaint will be dismissed with prejudice as against these state defendants.

B.  Claim Against the United States of America

The Complaint also must be dismissed as against the named defendant, the United States of America.  The United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, McPherson cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any individual defendants being sued in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).  Therefore, McPherson's claims asserting denial of his constitutional rights under the Fifth, Sixth and Fourteenth Amendments and denial of his right to consular notification under the Vienna Convention, Article 36, must be dismissed in their entirety against the United States.

C.  Denial of Right to Consular Notification

In his Complaint, McPherson principally alleges a violation of his right to consular notification under Article 36 of the Vienna Convention.

The United States is a signatory to the Vienna Convention on Consular Relations ("Vienna Convention"), April 24, 1963, 21

12

U.S.T. 77, 101 T.I.A.S. No. 6820, 596 U.N.T.S. 261, 1967 WL

18349, which came into force on April 24, 1964.

The Preamble states that "the purpose of such privileges and

immunities [set forth herein] is not to benefit individuals, but

to ensure the efficient performance of functions by consular

posts on behalf of their respective States."

Article 36 of the Vienna Convention provides, in relevant

part:

        1.  With a view to facilitating the exercise of consular
        functions relating to nationals of the sending State: ...
        (b) if [a detained person] so requests, the competent
        authorities of the receiving State shall, without delay,
        inform the consular post of the sending State if, within its
        consular district, a national of that State is arrested or
        committed to prison or to custody pending trial or is
        detained in any other manner.  Any communication addressed
        to the consular post by the person arrested, in prison,
        custody or detention shall also be forwarded by the said
        authorities without delay.  The said authorities shall
        inform the person concerned without delay of his rights
        under this subparagraph;
        (c) consular officers shall have the right to visit a
        national of the sending State who is in prison, custody or
        detention, to converse and correspond with him and to
        arrange for his legal representation ... .
        2.  The rights referred to in paragraph 1 of this Article
        shall be exercised in conformity with the laws and
        regulations of the receiving State, subject to the proviso,
        however, that the said laws and regulations must enable full
        effect to be given to the purposes for which the rights
        accorded under this Article are intended.

Vienna Convention, Article 36.

For three decades after the ratification of the Vienna

Convention by the United States, it appears that no claim was

asserted that Article 36(1)(b) conferred rights upon individuals

that could be enforced in our domestic courts, as distinguished

13

from the customary claims of treaty violations asserted by and between States-parties in their international relations. However, a passing suggestion by the Supreme Court in <u>Breard v. Greene</u>, 523 U.S. 371 (1998)(per curiam), that the Vienna Convention "arguably confers on an individual the right to consular assistance following arrest," triggered a flow of conflicting case law on whether the Article 36 of the Vienna Convention confers upon individuals *any* rights that can be enforced in our courts.[2]  Here, this Court is concerned only with the narrow issue of whether a detained alien may vindicate in an action for damages the failure of the detaining authority to

---

[2]  Many federal courts have considered violations of Article 36 in a variety of contexts.  <u>See</u>, <u>e.g.</u>, <u>Medillin v. Texas</u>, 552 U.S. ---, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008)(enforcement in state courts of the judgment of the International Court of Justice concerning Article 36 violations); <u>Sanchez-Llamas v. Oregon</u>, 548 U.S. 331 (2006)(suppression of evidence in a habeas corpus proceeding); <u>Mora v. People of the State of New York</u>, 524 F.3d 183 (2d Cir. 2008)(claim for damages under the Alien Tort Statute), <u>petition for certiorari</u> filed on July 23, 2008; <u>Gandara v. Bennett</u>, 528 F.3d 823 (11th Cir. 2008)(claim for damages under 42 U.S.C. § 1983); <u>Cornejo v. County of San Diego</u>, 504 F.3d 853 (9th Cir. 2007)(claim for damages under § 1983); <u>Jogi v. Voges</u>, 480 F.3d 822 (7th Cir. 2007)(on petition for rehearing)(claim for damages under the Alien Tort Statute); <u>United States v. Emuegbunam</u>, 268 F.3d 377 (6th Cir. 2001)(dismissal of indictment and reversal of conviction), <u>cert</u>. <u>denied</u>, 535 U.S. 977 (2002); <u>United States v. De La Pava</u>, 268 F.3d 157 (2d Cir. 2001)(ineffective assistance of counsel claim for failing to move to dismiss an indictment); <u>United States v. Jimenez-Nava</u>, 243 F.3d 192 (5th Cir.)(suppression of statement), <u>cert</u>. <u>denied</u>, 533 U.S. 962 (2001); <u>United States v. Santos</u>, 235 F.3d 1105 (8th Cir. 2000)(suppression of confession and reversal of conviction); <u>United States v. Li</u>, 206 F.3d 56 (1st Cir.)(en banc); (suppression of confession and reversal of conviction), <u>cert</u>. <u>denied</u>, 531 U.S. 956 (2000).

inform him of the availability of consular notification and access.

In this case, McPherson asserts jurisdiction under both 42 U.S.C. § 1983 and the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350.[3]  However, since McPherson is bringing this civil suit for damages for violation of a right to consular notification allegedly conferred by the Vienna Convention, this Court finds that it is immaterial at this point whether the action is founded under § 1983 or the ATS.  Rather, the critical question is whether Congress, by ratifying the Vienna Convention, intended to create private or individual rights and remedies enforceable in domestic U.S. courts by individual foreign nationals who are arrested, imprisoned or detained in this country.

Similar questions have arisen both in the context of civil suits for damages by foreign nationals and in the context of criminal and post-conviction proceedings involving foreign nationals.  The Supreme Court has thus far avoided answering those questions directly, see Medellin v. Texas, 128 S.Ct. at 1357 n. 4 (assuming, without deciding, that Article 36 creates judicially enforceable individual rights); Sanchez-Llamas, 126 S.Ct. at 2677-78 (same), although four Justices have expressed the view that these questions should be answered in the

_____

[3]  The ATS provides that the "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.

15

affirmative, see id. at 2693-98 (Breyer, J., dissenting, joined by Stevens, Souter, & Ginsburg, JJ.).  The United States Circuit Courts of Appeals are split.  Compare, for instance, Mora v. People of the State of New York, 524 F.3d 183, 194-207 (2d Cir. 2008)(finding that a failure to inform a detained alien of his "right" of consular notification and access under the Vienna Convention, Article 36, did not establish a right in alien that could be vindicated in a civil rights action for damages); Gandara v. Bennett, 2008 WL 2130577 *2-5 (11th Cir. 2008)(holding that the Vienna Convention did not contain private rights and remedies enforceable through § 1983); Cornejo v. County of San Diego, 504 F.3d 853, 859-64 (9th Cir. 2007)(concluding that Article 36's obligation to inform aliens of their right to consular notification does not create judicially enforceable individual rights); United States v. Emuegbunam, 268 F.3d 377, 391-94 (6th Cir. 2001)(same); and United States v. Jimenez-Nava, 243 F.3d 192, 196-98 (5th Cir. 2001)(same), with Jogi v. Voges, 480 F.3d 822, 834-35 (7th Cir. 2007)(concluding that Article 36 creates individual rights to be informed of consular notification and access that can be vindicated in a private action).

     The United States Court of Appeals for the Third Circuit has not yet definitively addressed this question of whether Article 36 creates rights of consular notification and access are privately enforceable in the federal courts.  Consequently, this

Court will follow the majority lead of the Second and Ninth Circuits.

Specifically, this Court is guided by the reasoning in <u>Mora v. People of the State of New York</u>. In <u>Mora</u>, the Second Circuit found that the text and content of Article 36 do not demonstrate an intent to create an individual right of consular notification that, when violated, can be vindicated through private litigation directly under Vienna Convention and Section 1983. For example, the first clause of paragraph 1 of Article 36 begins with the following statement of purpose: "[w]ith a view to facilitating the exercise of consular functions relating to nationals of the sending State." 21 U.S.T. at 100. Further, the requirement that the receiving State inform a detained foreign national about consular notification under ¶ 1(b) of Article 36 is never itself expressly referred to as a "right."[4] Moreover, the text of the Convention is completely silent as to whether private individuals can seek redress for violations of this obligation, or any other obligation set forth in Article 36, in the domestic courts of

---

[4]    While there are some references in the Vienna Convention to a "right" of access, these references are easily explained. The contracting States are granting each other rights, and telling future detainees that they have a "right" to communicate with their consul as a means of implementing the treaty obligations as between States.  Moreover, the isolated language in Article 36 is at most ambiguous as to the existence of rights that can be privately vindicated in court as a civil action for damages.

States-parties.[5]  The language of Article 36 is set forth in a document that is "primarily a compact between independent nations," although it "may also contain provisions which confer certain rights upon" individuals.  Mora, 524 F.3d at 194-195 (quoting Head Money Cases, 112 U.S. 580, 598).

The Preamble to the Convention also contains language that states "the purpose of such privileges and immunities is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective States."  21 U.S.T. at 79.

The Second Circuit further noted that there is a presumption that international agreements, even those directly benefitting individuals, generally do not create private rights or provide for a private cause of action in domestic courts.  Mora, 524 F.3d at 200 (citing Medillin, 552 U.S. at ___ n.3, 128 S.Ct. at 1357 n.3)(citations and quotation marks omitted).  In sum, the Second Circuit found that there was no indication of the treaty drafter's intent to provide for an individual right to be informed about consular notification and access that is enforceable through a damages action, even though there are a

---

[5]  The Vienna Convention elsewhere provides for remedies for violations of specific Articles, albeit remedies of States rather than of individuals.  See Vienna Convention, Art. 23(2), 21 U.S.T. at 92 (providing a remedy to receiving States for a sending State's failure to recall a consular official deemed a *persona non grata*); Art. 31, 21 U.S.T. at 97 (providing for compensation to a State upon the expropriation of consular premises by the receiving State).

number of ways in which the treaty drafters could have signaled their intention to do so.  The absence of any express intent militates against recognizing an individual right that can be vindicated in a damages action.  <u>Mora</u>, 524 F.3d at 200-04.

The Second Circuit also recognized that the views of the United States are entitled to substantial deference.  Two federal agencies, the Department of State and the Department of Justice, jointly submitted an *amicus* brief in <u>Mora</u> regarding the existence *vel non* of individual rights that can be vindicated privately in courts.  <u>Id</u>. at 204-05.

Similarly, the United States Court of Appeals for the Ninth Circuit held that Article 36 of the Vienna Convention does not unambiguously create privately enforceable rights regarding the violation of consular notification that could be vindicated in an action under § 1983.  The court likewise was guided by the language used in Article 36 and the lack of specific intent to create such individual rights.  The Ninth Circuit also found that international treaties customarily confer rights upon the States that are signatories to them, and that most courts accept a presumption against inferring individual rights from international treaties.  <u>Cornejo</u>, 504 F.3d at 858.  Indeed, the court concluded that the unmistakable focus of Article 36 is on consular functions, finding that the privileges discussed therein are explicitly those relating to consular posts.  Finally, the court noted that none of the 170 States parties to the Vienna

Convention has permitted a private tort suit for damages for violation of Article 36. Id. at 859-63.

This Court finds that based on the reasoning of the vast majority of the circuits,[6] and the interpretation of the United States Department of State, Article 36 does not create an individual right enforceable by McPherson here in an action for damages under either § 1983 or the ATS. Therefore, because McPherson's claim is founded on an alleged Article 36 violation, he fails to state a cognizable claim for relief and this action mst be dismissed accordingly.

C. Plaintiff's Claims are Time-barred

Alternatively, plaintiff's Complaint is subject to dismissal because it is clearly time-barred. The acts he complains of occurred in 1988, 1993 and 1995.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the

---

[6] The only circuit to find that Article 36 creates an enforceable remedy is the Seventh Circuit in Jogi v. Voges, 480 F.3d 822 (7th Cir. 2007).

20

Complaint.  See, e.g., Pino v. Ryan, 49 F.3d 51, 53 (2d Cir.
1995) (holding, under former § 1915(d) in forma pauperis
provisions, that sua sponte dismissal prior to service of an
untimely claim is appropriate since such a claim "is based on an
indisputably meritless legal theory"); Hall v. Geary County Bd.
of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001)
(unpub.) (applying Pino to current § 1915(e)); Rounds v. Baker,
141 F.3d 1170 (8th Cir. 1998)(unpub.); Johnstone v. United
States, 980 F. Supp. 148 (E.D. Pa. 1997) (applying Pino to
current § 1915(e)).  The requirements of 28 U.S.C. § 1915A
(governing civil actions in which a prisoner seeks redress from a
governmental entity or officer or employee of a governmental
entity) and 42 U.S.C. § 1997e (governing actions brought with
respect to prison conditions) that federal courts review and
dismiss any complaint that fails to state a claim parallels the
provision in 28 U.S.C. § 1915(e).

    Federal courts look to state law to determine the
limitations period for § 1983 actions.  See Wallace v. Kato, 549
U.S. __, 127 S.Ct. 1091, 1094 (2007).  Civil rights or
constitutional tort claims, such as that presented here, are best
characterized as personal injury actions and are governed by the
applicable state's statute of limitations for personal injury
actions.[7]  See Wallace, supra; Wilson v. Garcia, 471 U.S. 261,

---

    [7]  This would include plaintiff's claims under the ATS and
his claim that his right to consular notification was violated.

280 (1985).  Accordingly, New Jersey's two-year limitations

period on personal injury actions, N.J. Stat. Ann. § 2A:14-2,

governs plaintiff's claims.  See Montgomery v. DeSimone, 159 F.3d

120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township

Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).  Under N.J. Stat.

Ann. § 2A:14-2, an action for an injury to the person caused by a

wrongful act, neglect, or default must be commenced within two

years of accrual of the cause of action.  Cito, 892 F.2d at 25;

accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).  Unless

their full application would defeat the goals of the federal

statute at issue, courts should not unravel states' interrelated

limitations provisions regarding tolling, revival, and questions

of application.[8]  Wilson v. Garcia, 471 U.S. at 269.

---

[8]  New Jersey statutes set forth certain bases for
"statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing
tolling because of minority or insanity); N.J.S.A. § 2A 14-22
(detailing tolling because of nonresidency of persons liable).
New Jersey law permits "equitable tolling" where "the complainant
has been induced or tricked by his adversary's misconduct into
allowing the filing deadline to pass," or where a plaintiff has
"in some extraordinary way" been prevented from asserting his
rights, or where a plaintiff has timely asserted his rights
mistakenly by either defective pleading or in the wrong forum.
See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted),
certif. denied, 172 N.J. 178 (2002).  "However, absent a showing
of intentional inducement or trickery by a defendant, the
doctrine of equitable tolling should be applied sparingly and
only in the rare situation where it is demanded by sound legal
principles as well as the interests of justice."  Id.
    When state tolling rules contradict federal law or policy,
in certain limited circumstances, federal courts can turn to
federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370
(3d Cir. 2000).  Under federal law, equitable tolling is
appropriate in three general scenarios:
    (1) where a defendant actively misleads a plaintiff
    with respect to her cause of action; (2) where the

Here, as stated above, all of the conduct and alleged violations occurred in the years 1988, 1993 and 1995. Thus, at the latest, McPherson had until 1997, or more than ten years ago, to bring his claims of treaty and constitutional violations. Accordingly, these claims are now time-barred. McPherson alleges no facts or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law. Nor does plaintiff plead ignorance of the law or the fact of his incarceration (neither excuse being sufficient to relax the statute of limitations bar in this instance) as the basis for delay in bringing suit. In fact, plaintiff is completely silent with respect to the fact that his Complaint has been submitted out of time.

------

> plaintiff has been prevented from asserting her claim
> as a result of other extraordinary circumstances; or
> (3) where the plaintiff asserts her claims in a timely
> manner but has done so in the wrong forum.

Id. n.9.
    In most cases, "the limitations period begins to run from the time when plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Gentry v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). See also Oshiver v. Levin Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994)(a claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of this action"). "Plaintiff's actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386).

This Court also finds that plaintiff has not offered any explanation for his lack of diligence in pursuing his claim for more than ten years.  This omission strongly militates against equitable tolling of the statute of limitations.  Therefore, the Court finds that plaintiff's Complaint is now time-barred and the Complaint will be dismissed with prejudice in its entirety accordingly, as against all defendants.

D.   Fifth, Sixth and Fourteenth Amendment Violations

Next, to the extent that McPherson seeks to recover damages in his § 1983 action for alleged violations of his rights to due process and equal protection guaranteed under the Fourteenth Amendment, as well as his claims alleging Fifth and Sixth Amendment violations, such claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the Supreme Court held "that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harms caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  Heck, 512 U.S. at 486-87).  "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983."  Id. at 487.

24

Here, McPherson does not show that his conviction resulting from the 1995 arrest has been reversed or invalidated. Therefore, plaintiff's claims of constitutional violations will be dismissed without prejudice.

E.   Claims Against Prosecutors

Finally, McPherson's claims against the prosecutorial defendants, namely, District Attorney John Doe I, Ass't District Attorney John Doe II, District Attorney Lynne Abraham, and Ass't District Attorneys Paul Laughlin and Hugh Colihan, are barred by prosecutorial immunity.  Prosecuting attorneys are absolutely immune from their acts in initiating or pursuing criminal prosecution.  Imbler v. Pachtman, 424 U.S. 409, 431 (1976). Thus, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

A prosecutor is not entitled to absolute immunity, however, for actions undertaken in some other function.  See Kalina v. Fletcher, 522 U.S. 118 (1997) (prosecutor is protected only by qualified immunity for attesting to the truth of facts contained in certification in support of arrest warrant, as in her provision of such testimony she functioned as a complaining witness rather than a prosecutorial advocate for the state); Burns, 500 U.S. at 492-96 (the provision of legal advice to

25

police during pretrial investigation is protected only by
qualified immunity); <u>Buckley</u>, 409 U.S. at 276-78 (prosecutor is
not acting as an advocate, and is not entitled to absolute
immunity, when holding a press conference or fabricating
evidence).  <u>See</u> <u>also</u> <u>Yarris v. County of Delaware</u>, 465 F.3d 129
(3d Cir. 2006)(where the Court of Appeals for the Third Circuit
presents a detailed and nuanced analysis of when a prosecuting
attorney is, and is not, entitled to absolute immunity for
allegedly wrongful acts in connection with a prosecution,
holding, for example, that a prosecutor is not entitled to
absolute immunity for deliberately <u>destroying</u> highly exculpatory
evidence, but is entitled to immunity for making the decision to
deliberately <u>withhold</u> exculpatory evidence before and during
trial, but not after the conclusion of adversarial proceedings).

Because McPherson alleges no facts against the prosecutor
defendants in this case that would fall outside the scope of
their duties in initiating and pursuing a criminal prosecution
against McPherson, this Court will dismiss the Complaint against
these defendants because they are immune.

V.   <u>CONCLUSION</u>

Therefore, for the reasons set forth above, the Complaint will be dismissed in its entirety for failure to state a claim upon which relief may be granted at this time.  An appropriate order follows.


                                    /s/ SUSAN D. WIGENTON
                              United States District Judge
Dated: JULY 31, 2008

27